WILLIAM H. HUGHES, plaintiff in error, *vs*. THE PIEDMONT AND ARLINGTON LIFE INSURANCE COMPANY, defendant in error.

A life policy with participation in profits, contained this stipulation : "If after the regular payment of not less than two annual premiums, an ordinary life policy should cease by the non-payment of premiums, then, upon written application of the insured within thirty days from the time of such ceasing (exclusive of thirty days grace,) a new policy will be issued for the amount of cash premiums in even hundreds of dollars received by said company;" five regular payments were made, partly in cash and partly in notes ; the cash amounted to $706 50 being more than the amount of two annual premiums ; there was due on notes $568 50.

*Held*, that on a bill for specific performance, the complainant is entitled to a paid up policy for $700 00.

Insurance. Policy. Before Judge JAMES JOHNSON. Muscogee Superior Court. November Term, 1874.

Reported in the decision.

R. J. MOSES, for plaintiff in error.

INGRAM & CRAWFORD, for defendant.

JACKSON, Judge.

The complainant insured his life with defendant for the sum of $5,000 00 at an annual premium of $235 54, one half cash and the other half by a loan from the company to the assured at six per cent. per annum. The policy was a participating one, that is, the assured participated in profits earned by the company. Six regular premiums were paid, one-half cash and the other half in notes; and the interest on the notes was paid; $706 50 was paid in cash, and the assured owed the company, after deducting profits, $568 50. The policy contained the following stipulation: "If after the regular payment of not less than two annual premiums, an ordinary life policy should cease by the non-payment of premiums, then upon written application of the assured within thirty days from the time of such ceasing (exclusive of thirty days grace,) a new policy will be issued for the amount of cash premiums in even hundreds of dollars received by said company." Complainant filed his bill for specific performance, alleging that he had paid $707 00 cash premiums, and had made his application for a paid up policy in time, and praying a decree that defendant be compelled to issue the paid up policy to him for the use, etc., for $700 00. Defendant answered the bill, and alleged that they had refused because complainant owed them $568 50, on notes due after deducting profits, and that he should pay them up and then receive his paid up policy for the sum of $1,200 00, the even hundred of all the cash paid and due them by the unpaid notes. One of the notes was put in evidence, which pledges the policy for its payment, and all were alike. The parties agreed that the court should charge on the above facts whether complainant was entitled to decree or defendant. The court charged for defendant, the jury found generally for defendant, and the decree was rendered accordingly, and the complainant excepted.

The issue is, had the complainant complied with the terms of the policy so as to entitle him to a decree for a paid up policy of $700 00, or must he have paid up $568 00 more

before he made his application or brought his bill for specific performance, and should he have alleged that the notes were all paid in cash and prayed for a paid up policy of $1,200 00?

The condition precedent is "the regular payment of two annual premiums." Well, two annual premiums were regularly paid according to the terms agreed upon by the parties; and although all of these two first premiums was not paid in cash, yet in the five years that the payments were regularly made, upwards of $700 00 cash was paid, and it was part of the contract that *notes for half* the premium would be a good payment to bind the company, and therefore would be "regular," we think, in the sense of the contract.

If these two first annual payments were regular, what, then, does the company agree to do? They stipulate, *on that condition,* to issue "a new policy" "for the amount of *cash premiums* in even hundreds of dollars received by said company."

The proof is, that in this case $700 50 were received in cash by the company, and the interest on the notes all paid. This entitled the complainant to his paid up policy for even $700 00. The company expressed a willingness in their answer to give a paid up policy of $1,200 00, if the complainant would pay up $568 50 more, which is the sum due on the notes after deducting profits made. We cannot see how, under the words of this contract, this can be rightfully demanded. So many hundred dollars in cash have been paid, two regular annual payments, and more than two, have been made, and the contract is that the company will give a paid up policy for the even hundreds of dollars of the cash actually paid. The cash is $706 50 actually paid; the *even* hundreds of that sum is $700 00, and that is by the contract the paid up policy to which complainant is entitled.

If the sum of $568 50 were paid, as the company demands, the paid up policy would be increased to $1,200 00; and it would not make a great deal of difference. True, the company would be realizing interest on $568 50 until the death of the insured; but it should be borne in mind that the participation in the profits to which, on the termination of the contract, the

complainant would be entitled, would probably largely exceed this interest. If this contract terminates the policy lawfully on the failure to pay the premium after two regular annual payments, and if the company be held to be entitled to the interest on the notes, we do not see why the insured may not set-off the share of profits to which he would be entiled under his paid up policy.

In other words, we think the complainant in equity entitled either to a paid up policy of $1,200 00, from which $568 50, with interest, should be deducted at the time of payment, the death of the insured, and to which should be added his share of the profits up to the same period, or to a paid up policy for $700 00, and the notes to be canceled; and the latter is so much the easier and simpler mode of settling the controversy, and it avoids so entirely all uncertainty and intricate calculation, that we think it the better conclusion. It is the letter of the contract, and its reason and spirit seem to accord with its letter. We find no case in the books exactly analogous to this. A recent decision in the case of Clinton O. Dutcher and Annie C., his wife, *vs*. Brooklyn Life Insurance Company, of the circuit court of the United States, for the eastern district of Missouri, approaches it. There a ten year non-forfeiture policy, with participation in profits, provided that in case of non-payment of any premium, or any note given in part payment, "whatever balance due, less dividends there may be at the time of the death of the assured, will be deducted from the tenths assured." The dividends were to be applied towards payment of the notes. A paid up policy was to be issued for as many tenths as there had been annual premiums paid in cash. The policy was for $10,000 00. Four annual payments in cash *and notes* were made. A bill for specific performance was filed, claiming a paid up policy for $4,000 00. It was held that complainants were entitled to it, and that the notes, with accrued interest, less *dividends*, were a lien upon the policy, to be deducted when it became due. There the court ruled, the circuit and district judge both presiding, that the notes are payment as well

as the cash, and that participation in profits continued to the death, and the notes, with interest, less profits, were a lien on the paid up policy for $4,000 00, and it was so decreed. The language of the policy at bar is somewhat different, and we prefer to simplify the rule, and carry out the letter of this contract, and give complainants a decree for a paid up policy of $700 00: Insurance Law Journal, November 1875, 812. Our own court has had this subject before it once, in the case of *Moses vs. Brooklyn Life Insurance Company*, 50 *Georgia*, 196, the defendant being the same company, perhaps, as that in the case cited above, but the policy dissimilar. There this court ruled that the complainant was not entitled to a specific performance; but the case is different from this, in this, that the sum total of cash paid there did not equal two annual premiums, while here it largely exceeds two annual premiums. Besides, in that case the party was entitled to "as many tenths of the amount originally insured as there have been *annual* premiums *paid in cash*," in the case here the language is, "for the *amount* of cash premiums," meaning, it seems, whether paid *annually* in cash or not. The policy here, too, only requires as a condition precedent, "the *regular* payment of two annual premiums." Certainly the payment is regular, if it is made just as the company contracted to receive it. We have reflected upon the case long, and considered it with much deliberation, and construe this contract to be an agreement to furnish a paid up policy for as much cash as the company have received from complainant, less the odd sum over even hundreds of dollars, and reverse the judgment of the court below.

Judgment reversed.